O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEE FAULKNER, | ) | Case No. CV 08-07706 DDP (JWJx) |
| | ) | |
| Plaintiff, | ) | **ORDER (1) DISMISSING PLAINTIFF'S** |
| | ) | **RAILWAY LABOR ACT CLAIM AND (2)** |
| v. | ) | **GRANTING SWA'S MOTION FOR SUMMARY** |
| | ) | **JUDGMENT ON PLAINTIFF'S STATE LAW** |
| STEPHANIE DOMINGUEZ, an individual; MICHELLE SPACH, | ) | **CLAIMS** |
| an individual; PAUL LOBER, | ) | [Motion filed on November 16, |
| an individual; SWA AIRLINES, | ) | 2009] |
| a Texas corporation; TRANSPORT WORKERS UNION OF | ) | |
| AMERICA, TRANSPORT WORKERS UNION LOCAL 555, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court on a Motion for Summary Judgment filed by the defendant SWA Airlines Co. ("SWA"). After reviewing the papers submitted by the parties and considering the arguments raised therein, the Court DISMISSES Plaintiff's Railway Labor Act ("RLA") claim, GRANTS SWA's motion, and adopts the following Order.

///

///

///

I.      BACKGROUND

   A. Procedural History

   On November 21, 2008, the plaintiff Lee Faulkner ("Plaintiff") filed suit against his former employer, SWA, and his former Union, the Transportation Workers Union of America, Transport Workers Union Local 555 ("TWU"), alleging causes of action for (1) wrongful termination in violation of public policy; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) intentional infliction of emotional distress. (Compl. 1:16-21.)

   On February 6, 2009, the Court ordered Plaintiff to show cause why this action should not be dismissed for lack of subject matter jurisdiction. (Dkt. No. 4.) Plaintiff submitted a brief in response to the order to show cause on February 20, 2009, arguing that "any unresolved dispute between the plaintiff FAULKNER and SWA Airlines (SWA) . . . falls under the provisions of 45 U.S.C. Chapter 8, Subchapter II [The Railway Labor Act ("RLA")], and thus is properly under the jurisdiction fo this court." (Pl.'s Br. on O.S.C. 2:28-3:4.)

   On March 18, 2009, the Court issued an Order Finding Federal Question Jurisdiction, concluding that "although the Plaintiff did not explicitly state that the claims [against TWU] arise out of [its] affirmative 'fair representation' duty that unions owe to their representatives under the RLA, a fair reading of the entire Complaint makes clear that the Plaintiff is alleging such an action." (Order 4:23-27, Dkt. No. 24.) The Court therefore found federal question jurisdiction on the basis of Plaintiff's unfair

2

representation claim against TWU, and supplemental jurisdiction over Plaintiff's state law claims. (Id.)

SWA and TWU both moved for summary judgment on November 16, 2009. Although Plaintiff opposes SWA's motion, he filed a Notice of Non-Opposition to TWU's motion on January 4, 2010. (Dkt. No. 81.) Because Plaintiff did not oppose TWU's motion, the Court is required to "assume that the material facts as claimed and adequately supported by [TWU] are admitted to exist without controversy . . . ." L.R. 56-3. As a result, the Court granted TWU's motion and entered judgment in favor of TWU. (Dkt. Nos. 94, 98.)

**A.   Factual History**

Except where otherwise noted, Plaintiff has admitted these facts exist without controversy. Plaintiff was employed by SWA as a ramp agent at Bob Hope Airport in Burbank, California, until his employment was terminated after he admitted to submitting falsified doctor's notes to SWA on behalf of himself and three other SWA employees. (SWA's Statement of Undisputed Facts and Conclusions of Law ("SUF") 1, 12-15, 19.)

During all times relevant to this case, TWU and SWA were parties to a collective bargaining agreement ("CBA"), which governed the terms and conditions of employment for SWA's ramp, operations, provisioning, and freight agents, including Plaintiff. (SUF 2.) The agreement provided that employees like Plaintiff could be terminated for abusing sick leave or sick pay and that they could be subject to disciplinary action, including termination, for falsifying any Company records, including claims

for sick leave or sick pay. (SUF 5-6.) Plaintiff was aware of these terms of the CBA. (SUF 8.)

Between 2004 and 2007, Plaintiff submitted six doctor's notes on his own behalf that purported to be from Family Health Care Medical Group, despite knowing that each of the notes was falsified. (SUF 13.) SWA initiated a fact-finding hearing into whether Plaintiff had abused sick time and sick pay after learning that Family Health Care Medical Group had gone out of business around the year 2000. (SUF 10.) During the fact-finding hearing, in which Plaintiff was represented by TWU, Plaintiff admitted to writing the six doctor's notes he had submitted on his behalf. (SUF 13.) He also admitted to writing similar doctor's notes and submitting them to SWA on behalf of three other employees without their knowledge or consent. (SUF 19.) Plaintiff now claims that he did not, in fact, write any of the letters. (Pl.'s Opp'n to SUF 13, 19.) This evidence, however, is immaterial, as Plaintiff does not dispute having knowingly submitted falsified notes, only having written them himself. (Id.)

Following the fact-finding hearing, Plaintiff was informed in a meeting with a SWA station manager and his TWU representative that SWA was terminating his employment for knowingly presenting a falsified doctor's note in violation of the CBA. (SUF 15.) Plaintiff never filed a grievance under the CBA to challenge his termination (SUF 16.)[1] Two of the other SWA employees for whom

---

[1] Plaintiff purports to dispute this fact by alleging that TWU advised him not to file a grievance. (Pl.'s Opp'n to SUF 16.) However, in failing to oppose TWU's motion for summary judgment, Plaintiff is deemed to have admitted that TWU did in fact advise him of his right to grieve his termination. See L.R. 56-3; (TWU (continued...)

4

1 Plaintiff admitted submitting falsified doctor's notes were
2 terminated by SWA. (SUF 20.) They, however, asked TWU to grieve
3 their terminations, and ultimately reached a settlement with SWA
4 resulting in their reinstatement. (Id.)

5    The sole reason plaintiff was terminated from employment with
6 SWA was the fact that he submitted falsified doctor's notes to SWA.
7 (SUF 22.) SWA did not terminate Plaintiff's employment because of
8 any physical disability, any mental disability, or any medical
9 condition. (SUF 22.)

## II. PROCEDURAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A party opposing summary judgment must come forward with specific facts, supported by admissible evidence,

---

[1](...continued)
SUF 21-24, 27).
    In any event, Plaintiff's allegation fails to raise a genuine issue of material fact because it is the law of the case that TWU did not breach its duty of fair representation. See United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.") (internal quotation marks and citation omitted).

5

showing a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).

Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**III. DISCUSSION**

**A.   State-Law Contractual and IIED Claims are Preempted**

SWA argues that Plaintiff's state law causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress ("IIED") are preempted by the RLA, 45 U.S.C. §§ 151 <u>et seq.</u>

The RLA, which was extended to cover the airline industry in 1936, was enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 252 (1994). To realize this goal, the RLA provides for mandatory arbitration of "major" disputes-- those involving "the formation of collective bargaining agreements or efforts to secure them"-- as well as "minor disputes"-- those "involv[ing] controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." <u>Id.</u>

Congress intended the RLA to preempt only those disputes "involving the interpretation or application of existing labor

6

agreements." Id. at 256. However, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." Id. In order to determine whether a state law claim is preempted by the RLA, "courts should apply the preemption test used in cases under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185." Espinal v. Nw. Airlines, 90 F.3d 1452, 1456 (9th Cir. 1996) (citations omitted).

Thus, in RLA cases, "as in LMRA cases," a minor dispute is subject to RLA preemption where the plaintiff "contends that an employer's actions violated rights protected by the CBA." Id. However, "where a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption." Id. A state law claim is only preempted by the RLA where it "is dependent on the interpretation of a collective-bargaining agreement." Id. (quoting Norris, 512 U.S. at 262).

In light of the undisputed facts that (1) the CBA is the only contract that governs the terms of Plaintiff's employment and (2) Plaintiff admits that "any unresolved dispute between the plaintiff FAULKNER and Southwest Airlines . . . falls under the provisions of 45 U.S.C. Chapter 8, Subchapter II," Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and IIED are preempted. Id. at 1459 (holding that the plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims were preempted by the RLA and that his "only contractual remedies lie in the grievance procedures set forth under the CBA"); Saridakis v. United Airlines, 166 F.3d

7

1272, 1278 (9th Cir. 1999) ("We have repeatedly held that determining whether an employer's conduct is outrageous requires an interpretation of the terms of the CBA, and therefore the claim is not independent. . . . Consequently, [Plaintiff's] claim for [IIED] cannot be interpreted independently of the CBA and is therefore preempted by the RLA.").

///

///

**B.   Plaintiff's Termination Did Not Violate Public Policy**

Even assuming Plaintiff's state-law cause of action for wrongful discharge in violation of public policy is not preempted,[2] Plaintiff's claim fails as a matter of law.  Plaintiff's Complaint alleges that SWA's termination of his employment violated public policy, as set forth in California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12490(a), which prohibits employers from terminating employees on the basis of "physical disability, mental disability, [or] medical condition," among others.

In Tameny v. Atl. Richfield Co., 610 P.2d 1330, 1331 (Cal. 1980), the California Supreme Court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."  The court later clarified that "a Tameny cause of action must be 'carefully tethered to fundamental policies that are delineated

---

[2] Such claims are not always preempted.  See Saridakis, 166 F.3d at 1278 ("[W]e have made clear that wrongful discharge claims based on public policy violations are not preempted by federal labor laws because such claims are derived from sources outside the CBA.")

8

constitutional or statutory provisions." <u>Miklosy v. Regents of Univ. of Cal.</u>, 188 P.3d 629, 707-08 (Cal. 2008) (quoting <u>Gantt v. Sentry Ins.</u>, 824 P.2d 680, 688 (Cal. 1992), <u>overruled on other grounds by</u> <u>Green v. Ralee Eng'g Co.</u>, 19 Cal.4th 66 (1998)).

Plaintiff admits that SWA terminated his employment for submitting falsified doctor's notes and for no other reason. (SUF 22.) He further admits that SWA did not terminate his employment because of any physical disability, any mental disability, or any medical condition. (SUF 22.) Thus, his termination did not violate any public policy expressed in FEHA. Cal. Gov. Code § 12490(a).

Plaintiff nonetheless argues that because he was treated differently from the other two SWA employees who were later reinstated, his discharge constitutes "unequal treatment under the law, a violation of the Fourteenth Amendment to the U.S. Constitution, and an obvious violation of public policy." (Opp'n 10:11-13.) This contention is frivolous. The Fourteenth Amendment is clearly inapplicable because it only applies to state actors and only prohibits invidious discrimination. <u>See, e.g.</u>, <u>Williamson v. Lee Optical of Oklahoma</u>, 348 U.S. 483, 489 (1955) ("The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."); <u>Jackson v. Brown</u>, 513 F.3d 1057, 1079 (9th Cir. 2008) (noting that the Fourteenth Amendment "erects no shield against merely private conduct"). Plaintiff has otherwise failed to tether a purported public policy against "unequal treatment" in general to any constitutional or statutory provision. Therefore, as a matter of law, SWA's termination of Plaintiff's employment did not violate public policy.

9

**C.  This Court Lacks Jurisdiction Over Plaintiff's RLA Claim for Breach of the CBA**

To the extent that Plaintiff's Complaint can be read to allege a claim under the RLA that SWA breached the CBA, this Court lacks jurisdiction to hear it.

The RLA "generally requires exhaustion of internal grievance procedures for all 'minor disputes,' which are defined as 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" Kozy v. Wings W. Airlines, Inc., 89 F.3d 635, 639 (9th Cir. 1996) (quoting Norris, 512 U.S. at 253).  The RLA provides that such disputes "are within the exclusive jurisdiction of the National Railroad Adjustment Board." Bautista v. Pan. Am. World Airlines, Inc., 828 F.2d 546, 551 (9th Cir. 1987) (citing Andrews v. Louisville & Nash R.R., 406 U.S. 320 (1972)).

However, courts recognize a narrow exception where the employee alleges that the union breached its duty of fair representation by acting "in concert" with the employer, making resort to the Adjustment Board "absolutely futile." Glover v. St. Louis-S.F. Ry., 393 U.S. 324, 331 (1969).  Where an employee attempts to bring a Glover-style suit against his union and employer, "the court must first examine the claim against the union." Bautista, 828 F.2d at 551.  If the court finds that "the employee does not have a triable claim against the union, then all that is left is his claim against the employer.  In that event, Glover does not apply and the RLA requires that the claim be heard before the Adjustment Board." Id. at 552.  Thus, in Bautista, the Ninth Circuit held that because the district court entered summary

judgment in favor of the union on the plaintiffs' unfair representation claim, it lacked jurisdiction over their claim against the employer. Id.; see also Peters v. Burlington N. R. Co., 931 F.2d 534, 537 (9th Cir. 1990) ("The district court correctly concluded that its jurisdiction over the contractual claim [under the RLA] against [the employer] was contingent upon a showing by [the plaintiff] that he had a triable claim against the union.").

Plaintiff did not oppose TWU's motion for summary judgment on his unfair representation claim. As a consequence, the Court entered judgment in favor of TWU, concluding that, as a matter of law, TWU did not breach its duty of fair representation. Therefore, the court lacks jurisdiction to hear Plaintiff's claim that SWA breached the CBA. See Croston, 999 F.2d at 387.

**IV. CONCLUSION**

For the foregoing reasons, the Court dismisses Plaintiff's RLA claim for breach of the CBA for lack of jurisdiction. In addition, the Court grants SWA's motion for summary judgment with respect to each of Plaintiff's state law claims.

IT IS SO ORDERED.

Dated: January 28, 2010

DEAN D. PREGERSON
United States District Judge

11